# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs September 14, 2011

## STATE OF TENNESSEE v. MONROE JAMES DODSON, JR.

**Appeal from the Criminal Court for Davidson County**
**No. 2009-A-829    Steve Dozier, Judge**

---

**No.  M2010-01615-CCA-R3-CD - Filed July 12, 2012**

---

Appellant, Monroe James Dodson, Jr. and his co-defendants were indicted by the Davidson County Grand Jury for three counts of aggravated rape, two counts of especially aggravated kidnapping, two counts of aggravated robbery, one count of aggravated burglary, and one count of possession of a weapon during the commission of a felony.  Appellant pled guilty to one count of aggravated rape, two counts of especially aggravated kidnapping, two counts of aggravated robbery, one count of aggravated burglary, and one count of employing a weapon during a felony with prior convictions.  The trial court held a separate sentencing hearing and sentenced Appellant to an effective sentence of eighty-two years.  Appellant appeals both the length of his sentences and the imposition of consecutive sentences.  After a review of the record on appeal, we have determined that the enhancement factors used by the trial court were supported by the record and that, therefore, the length of the sentences is affirmed.  We also conclude that the record on appeal supports the trial court's conclusion that Appellant is a dangerous offender and that consecutive sentences are warranted in his case.  For these reasons, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Trial Court are Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR. and NORMA MCGEE OGLE, JJ., joined.

Michael A. Colavecchio, Nashville, Tennessee, for the appellant, Monroe James Dodson, Jr.

Robert E. Cooper, Jr., Attorney General and Reporter; Meredith DeVault, Assistant Attorney General; Victor S. Johnson, District Attorney General, and Rob McGuire, Assistant District Attorney General, for the appellee, State of Tennessee.

OPINION

*Factual Background*

The trial court related the following facts in its sentencing order:

Prior to the defendants' election to enter to pleas of guilty, E.K. [one of the victims] testified in trial to the events of December 22, 2008. She stated that she and her boyfriend R.C. [the other victim] were at home that evening putting weather stripping on the windows inside their house and packing for a family visit. They heard a knock on the door and as they went to answer the door two men with guns forced their way into the house. She saw the eyes of both men. They were taken back to the office, tied up, their eyes covered, and placed on the floor. She saw a gun and believed she would get shot. The men were using vulgar language, calling her a "bitch" and telling her "to get down or we will shoot you." They continually asked her where the drugs or money was in the house, but she told them that they did not have any. They took televisions, dvds, two purses, a new cell phone, smashed an old cell phone and took cash from her wallet. They also referred to their puppy who was barking and told them to shut the dog up or they would shoot it. At trial, the victim identified the defendants as two of the men who committed these offenses. A third defendant was present during these events.

She continued her testimony stating that a weapon was fired and the defendants said it was to show they were serious. R.C. was taken from the office. The defendants asked E.K. if she had a condom. She told them she did not. They then asked about saran wrap, which she told them was in the kitchen. One of the defendants started [feeling] around in her pockets then put his fingers inside of her vagina stating they were looking for drugs. She was lying on her stomach and the defendants pulled down her pants and one of the defendants penetrated her with his penis and told her to "pump her ass." The defendants used the saran wrap as they would have used a condom. The same person flipped her over on her back and penetrated her again. Then a second person flipped her onto her stomach and anally raped her with his penis. She stated she was in a lot of pain and was praying. The other defendants were carrying stuff out of the house and continued to tell them to shut the dog up. The defendants then asked E.K. where the bleach was in the house. She knew that they wanted to use it to clean her and she stated this really scared her. She told them that they did not have bleach and they went under the kitchen sink

and found floor cleaner. They took her to the bathroom, told her to take her sweat shirt off and began to pour the floor cleaner all over her. At this point, the Court took a recess at the request of a juror, and during that recess, the defendants requested to enter a plea agreement to negotiated offenses.

At the sentencing hearing, R.C. testified as to the impact the crime had on his life. He stated [he] and E.K. had been unable to return to the house in which they had been assaulted based upon the crimes. He testified they were constantly reliving the crime. They moved to secure condominium complex which was not the type of home they had envisioned themselves living. He stated during the crime, his eyes were covered, his hands were bound behind his back for approximately an hour. During that time, the defendants went around the house, seeming to enjoy the crimes they were committing by the way they laughed at items they found as they ransacked the house, stating "Merry Christmas F***er – this may be your last Christmas" and placing weapons to their heads several times throughout the ordeal. He testified that the defendants also fired a gunshot inside the home and stated, "next time it could be you." He was taken to the front room while bound and heard water running in the bathroom and some talk about cleaning up. He ran out of the house thinking that he was going to be shot. He stated they had to begin counseling after the trauma and are continuing that counseling.

E.K., who had testified under oath at the start of the trial, testified as to how the events altered her life. She stated her life is completely changed in the sense of how she perceives her safety. She stated she began counseling after this incident and now goes about once a week.

After the jury was selected and the victim, E.K. testified, Appellant decided he wanted to enter a plea of guilty as part of a plea bargain. He pled guilty to one count of aggravated rape, two counts of especially aggravated kidnapping, two counts of aggravated robbery, one count of aggravated burglary, and one count of employing a weapon during a felony with prior convictions. The trial court subsequently held a sentencing hearing on March 26, 2010. On April 5, 2010, the trial court filed a sentencing order in which the trial court sentenced Appellant to twenty-five years for the aggravated rape, twenty-three years for each especially aggravated kidnapping, ten years for each aggravated robbery, five years for the aggravated burglary and six years for possession of a weapon during a felony. He was sentenced as a Range I, standard offender. Appellant's sentences for aggravated rape, especially aggravated kidnapping and employment of a weapon during a dangerous felony were to be served at 100%. The trial court ordered the sentencing for aggravated rape, both sentences for especially aggravated kidnapping, the sentence for aggravated burglary, and the sentence for

possession of a weapon during a felony to be served consecutively to each other and the other sentences. The sentences for aggravated robbery were ordered to be served concurrently. Appellant's effective sentence was eighty-two years. In addition, the trial court ordered that the eighty-two year sentence be served consecutively to any sentence that was remaining on a prior conviction.

## ANALYSIS

On appeal, Appellant argues that the trial court erred in its application of enhancement and mitigating factors and in imposing consecutive sentences. The State disagrees.

"When reviewing sentencing issues . . . , the appellate court shall conduct a de novo review on the record of the issues. The review shall be conducted with a presumption that the determinations made by the court from which the appeal is taken are correct." T.C.A. § 40-35-401(d). "However, the presumption of correctness which accompanies the trial court's action is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). We are to also recognize that the defendant bears "the burden of demonstrating that the sentence is improper." *Ashby*, 823 S.W.2d at 169.

## Length of Sentence

In making its sentencing determination, a trial court, at the conclusion of the sentencing hearing, first determines the range of sentence and then determines the specific sentence and the appropriate combination of sentencing alternatives by considering: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the enhancement and mitigating factors; (6) any statistical information provided by the administrative office of the courts regarding sentences for similar offenses; (7) any statements the defendant wishes to make in the defendant's behalf about sentencing; and (8) the potential for rehabilitation or treatment. T.C.A. §§ 40-35-210(a), (b), -103(5); *State v. Williams*, 920 S.W.2d 247, 258 (Tenn. Crim. App. 1995). When imposing the sentence within the appropriate sentencing range for the defendant:

> [T]he court shall consider, but is not bound by, the following advisory sentencing guidelines:

(1) The minimum sentence within the range of punishment is the sentence that should be imposed, because the general assembly set the minimum length of sentence for each felony class to reflect the relative seriousness of each criminal offense in the felony classifications; and

(2) The sentence length within the range should be adjusted, as appropriate, by the presence or absence of mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114.

T.C.A. § 40-35-210(c) (2006).

At the outset we note that Appellant committed the criminal offenses at issue on December 22, 2008; therefore, the 2005 amendments to the Sentencing Act apply to our review of his sentencing. The 2005 amendments to the Sentencing Act made the application of the enhancement factors advisory in nature. *See* T.C.A. § 40-35-114; *State v. Jackie Lynn Gray*, No. M2007-02360-CCA-R3-CD, 2008 WL 2579175, at *5 (Tenn. Crim. App., at Nashville, June 28, 2008), *perm. app. denied*, (Tenn. Dec. 29, 2008); *State v. Troy Sollis*, No. W2007-00688-CCA-R3-CD, 2008 WL 1931688, at *3 (Tenn. Crim. App., at Jackson, May, 2, 2008). In fact, "[t]he 2005 amendments [to the sentencing act] deleted as grounds for appeal a claim that the trial court did not weigh properly the enhancement and mitigating factors." *State v. Carter*, 254 S.W.3d 335, 344 (Tenn. 2008).

After a review of the sentencing order, it is clear that the trial court considered the nature and characteristics of the criminal conduct involved, Appellant's history and background, the mitigating and enhancement factors, and the principles of sentencing. *See id.* at 345-46. Therefore, there is a presumption that the trial court's determination is correct.

The trial court applied six enhancement factors and no mitigating factors. The trial court made the following findings with regard to the applicable enhancement factors:

(1)     The defendant has a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range. The defendant has two prior weapons offenses among nine other misdemeanor convictions.

(5)     The defendant treated, or allowed a victim to be treated, with exceptional cruelty during the commission of the offense. The victims described the language and statements the defendant used, the manner

in which the victim's clothing was removed in addition to their inhumane actions towards the victim in the bathtub. This factor applies to counts one [aggravated rape] and four [especially aggravated kidnapping].

(8)     The defendant, before trial or sentencing, failed to comply with the conditions of a sentence involving release into the community. The defendant has two previous probation violations, one of which sadly was not served until the day after these horrible crimes.

(10)    The defendant had no hesitation about committing a crime when the risk to human life was high. The defendant shot a weapon inside the home of the two victims with them present.

(13)    At the time the felony was committed the defendant was on probation for a felony drug conviction.

(16)    The defendant was adjudicated to have committed a delinquent act or acts as a juvenile that would constitute a felony if committed by an adult. The defendant was adjudicated delinquent on an Aggravated Burglary charge. He has additional adjudications which are misdemeanors or which do not indicate felonies and the Court cannot consider.

The Court places great weight on the criminal convictions, the probation violations and the treatment of the victim.

Appellant argues that the trial court erred in applying enhancement factors (1), (5), and (10). *See* T.C.A. § 40-35-115(1), (5), (10). With regard to enhancement factor (1), Appellant argues that "[t]here is no proof in the record that the Appellant had any prior convictions for *violent offenses or felony convictions*." (emphasis added). However, as is clearly stated in the statute, this enhancement factor is not based upon solely violent or felony offenses. The statute clearly reads "history of criminal convictions or criminal behavior." *See* T.C.A. § 40-35-115(1). We have reviewed the presentence report submitted at the sentencing hearing. Appellant's criminal history is quite extensive, starting when he was a juvenile and extending throughout the six years he was an adult leading up to the instant convictions. We conclude that this enhancement factor was properly applied.

Appellant argues the following with regard to the application of enhancement factors (5) and (10):

The trial court applied Enhancement Factor #5. There is no proof in the record that the Appellant said or did anything attributed to at least one (1) of the men alleged to have entered the victim's home and perpetrate the other acts alleged. The testimony presented from [R.C.] was that his eyes were bound [ ]. Additionally, the statement of facts as asserted by [the State] was that both [E.K.] and [R.C.] were blindfolded[ ]. Neither witness could identify the Appellant as having performed any of the acts alleged, whether the Appellant was even in the room when the acts were alleged to have occurred, or in fact whether or not the Appellant was even inside the house at any of those times.

The trial court applied Enhancement Factor #10. There is no proof in the record that the Appellant was the one who fired the weapon, that the even [sic] Appellant possessed a weapon that could be fired, or was even inside the home when a weapon was fired by someone else. As stated previously, both [E.K.] and [R.C.] were blindfolded[ ].

As stated above, Appellant pled guilty to aggravated rape, two counts of especially aggravated kidnapping, two counts of aggravated robbery, one count of aggravated burglary, and one count of employing a weapon during a felony. Therefore, Appellant has admitted that he participated in the offenses. He cannot now argue that the above enhancement factors do not apply because there was no proof that he was involved in the commission of the offenses. We conclude that the application of the enhancement factors are supported by the record. As stated above, the weight given to the enhancement and mitigating factors are no longer a basis for appeal. *Carter*, 254 S.W.3d at 344.

Therefore, this issue is without merit.

### Consecutive Sentences

Appellant also argues that the trial court erred in imposing consecutive sentences. The State disagrees.

Under Tennessee Code Annotated section 40-35-115(a), if a defendant is convicted of more than one offense, the trial court shall order the sentences to run either consecutively or concurrently. A trial court may impose consecutive sentencing upon a determination that

one or more of the criteria set forth in Tennessee Code Annotated section 40-35-115(b) exists. This section permits the trial court to impose consecutive sentences if the court finds, among other criteria, that:

> (1) The defendant is a professional criminal who has knowingly devoted the defendant's life to criminal acts as a major source of livelihood;
>
> (2) The defendant is an offender whose record of criminal activity is extensive;
>
> (3) The defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist who concludes as a result of an investigation prior to sentencing that the defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior with heedless indifference to consequences;
>
> (4) The defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high; . . . .

T.C.A. § 40-35-115(b). When imposing a consecutive sentence, a trial court should also consider general sentencing principles, which include whether or not the length of a sentence is justly deserved in relation to the seriousness of the offense. *See State v. Imfeld*, 70 S.W.3d 698, 708 (Tenn. 2002). The imposition of consecutive sentencing is in the discretion of the trial court. *See State v. Adams*, 973 S.W.2d 224, 230-31 (Tenn. Crim. App. 1997).

This section permits the trial court to impose consecutive sentences if the court finds, among other criteria, that "the defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high." T.C.A. § 40-35-115(b)(4). However, before ordering the defendant to serve consecutive sentences on the basis that he is a dangerous offender, the trial court must find that the resulting sentence is reasonably related to the severity of the crimes, necessary to protect the public against further criminal conduct, and in accord with the general sentencing principles. *See State v. Imfeld*, 70 S.W.3d 698, 708-09 (Tenn. 2002); *State v. Wilkerson*, 905 S.W.2d 933, 938-39 (Tenn. 1995).

The trial court made the following findings:

In this case, the actions of the defendant during the offense, including the defendant's threatening statements, the firing of a weapon, the inhumane treatment of the victim and the nature of the offenses, indicate he is a danger to this community with little or no regard for human life. The Court finds the defendant has not demonstrated an ability to be rehabilitated. Based on the totality of the circumstances, the Court finds the aggregate sentence is necessary to protect the public. *See State v. Wilkerson*, 905 S.W.2d 933 (Tenn. 1995).

The trial court made the appropriate findings to support the imposition of consecutive sentences based upon the conclusion that Appellant is a dangerous offender. The record amply supports the findings of the trial court.

Therefore, this issue is without merit.

## **CONCLUSION**

For the foregoing reasons, we affirm the judgments of the trial court.

_____
JERRY L. SMITH, JUDGE